IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JUNE 1998 SESSION



FILED

September 9, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9708-CC-00335 |
| | ) | |
| | ) | Blount County |
| v. | ) | |
| | ) | Honorable D. Kelly Thomas, Jr., Judge |
| | ) | |
| GARY EUGENE TEEPLE, | ) | (Two counts of misdemeanor assault) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Raymond Mack Garner
District Public Defender
    and
Natalee S. Hurley
Assistant Public Defender
419 High Street
Maryville, TN 37804

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Georgia Blythe Felner
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

Michael L. Flynn
District Attorney General
        and
Edward P. Bailey, Jr.
Assistant District Attorney General
363 Court Street
Maryville, TN 37804

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Gary Eugene Teeple, appeals as of right from his convictions for two counts of assault, Class A and B misdemeanors, respectively, in a jury trial. The trial court sentenced the defendant to concurrent sentences in the county jail for a term of eleven months and twenty-nine days for the Class A misdemeanor assault and a term of six months for the Class B misdemeanor assault. Although the court provided that the defendant would be immediately eligible for existing programs, it ordered that he serve thirty percent of his sentences before full release. On appeal, the defendant challenges the sufficiency of the evidence and the denial of full probation. We affirm the trial court's judgments of conviction.

Larry Kauker, a former police officer with the Alcoa Police Department, testified that he and Officer Hubert Holden responded to a 911 call reporting a domestic violence complaint. He said that they drove to Lakeview Terrace Mobile Home Park and a woman directed them to a trailer. He said that Lieutenant Ronnie Sellers and several other officers arrived. Officer Kauker testified that he and Officer Holden entered the trailer and saw Cynthia Jenkins, one of the assault victims. Officer Kauker testified that Ms. Jenkins was distraught, upset and crying. He testified that he did not know whether the victim was intoxicated, but he did not see any signs that she had been drinking or was intoxicated. He said that Ms. Jenkins had blood on her face and that her face appeared to be injured. He stated that another woman in the trailer told him what happened.

Officer Kauker testified that based on what the woman told him, he, Officer Holden, and Lieutenant Sellers went to the defendant's trailer where a party was being held. Officer Kauker testified that the trailer had been damaged as evidenced by a door that had been torn from its frame. He stated that the defendant was inside, that

2

Lieutenant Sellers talked to the defendant, and that Lieutenant Sellers then instructed Officer Kauker to arrest the defendant for domestic violence. Officer Kauker testified that the defendant did not appear to be injured. He stated that he could not remember whether the defendant was drunk. He said that he did not have any problems handcuffing the defendant and placing him in the back of the cruiser.

Officer Kauker testified that they then learned that the Blount County Sheriff's Department had jurisdiction over the crime. He said that the defendant was removed from his cruiser, and he and Officer Holden stood behind the defendant and removed his handcuffs. Officer Kauker testified Lieutenant Sellers was standing approximately an arm's length in front of the defendant. He said that the defendant then shouted at Lieutenant Sellers that he knew were he lived and that he was going to get him and his family. He stated that as they were switching the handcuffs, the defendant began struggling and then spat in Lieutenant Sellers' face. He said that the defendant was then sprayed with a chemical restraint device. Officer Kauker testified that he had been sprayed with the device before and that a person can detect if the defendant had been sprayed by its odor. He said that he did not smell the spray on the defendant before handcuffing the defendant and before the defendant spat on Lieutenant Sellers. He stated that the defendant calmed down after being sprayed and that he was then placed in the county cruiser. On cross-examination, Officer Kauker conceded that he did not know when the damage to the trailer door occurred. He admitted that he did not investigate whether the defendant and the victim had been drinking.

Officer Hubert Holden, a reserve police officer for the City of Alcoa, testified that Ms. Jenkins had been crying and had quite a bit of blood on her arms and on her face. He said that her mouth and nose were bleeding and that a third of her face was covered in blood. He testified that there was also quite a bit of blood on her

3

clothing. Officer Holden testified that when Lieutenant Sellers questioned Ms. Jenkins, she told him that the defendant was the one who had caused her injuries. He said that Ms. Jenkins told Lieutenant Sellers that she and the defendant had argued but that the argument worsened and the defendant hit her. He stated that Ms. Jenkins appeared to have been drinking but that she appeared to be more injured than she was intoxicated.

Officer Holden testified that the steps to the defendant's trailer had been torn away. He said that the inside of the trailer was in disarray, and he believed that a struggle had taken place. Officer Holden testified that the furniture and the lamps were knocked over. He stated that there was a hole in the door that looked like someone had stuck a fist through it. Officer Holden testified that the officers found the defendant inside the trailer sitting on the couch. He stated that the defendant was agitated when they went inside the trailer. He said that the defendant was in a very intoxicated state, and he described the defendant as being "out of it" and being "way beyond controlling himself." He said that the defendant could not walk without assistance. He stated that the defendant did not appear to be injured.

Officer Holden testified that the defendant told him that there had been an argument but that it was not a big deal to him. He stated that the defendant resisted somewhat when they tried to place him in the cruiser after being handcuffed. Officer Holden stated that when they removed the defendant from the cruiser to transfer custody to the sheriff's department, the defendant cussed Lieutenant Sellers, threatened him, and spat on him. He said that Lieutenant Sellers then sprayed the defendant. He stated that the defendant did not calm down and that it took five or six officers to subdue the defendant in order for the officers to completely change the handcuffs. Officer Holden testified that Lieutenant Sellers did nothing to upset the defendant but rather he tried to calm the defendant down. Officer Holden conceded

4

that he did not know when the damage to the trailer took place. He stated that the defendant admitted striking at Ms. Jenkins and knocking a hole in the door.

Deputy Sheriff Lynn Steadman testified that he arrived at the Lakeview Terrace Mobile Home Park and saw the defendant sitting in the back of a police cruiser. He stated that the officers decided to transfer the defendant to his cruiser because the offense occurred in Blount County. He said that as he was removing items from the backseat of his cruiser, he heard Lieutenant Sellers state that the defendant spat on him. Deputy Steadman testified that he turned around and saw Lieutenant Steadman wiping spit off his face.

Cynthia Jenkins testified that she was the defendant's girlfriend and that they had lived together for four years. She said that she and the defendant had two children together. She stated that she sustained physical injuries, including bruising all over her body and face, on the night of September 9, 1994, but that she did not know how the injuries occurred. Ms. Jenkins testified that she was very intoxicated. She said that she stayed at her grandparent's house after the offenses occurred. She testified that she went back to the trailer park the next day and that her neighbors told her what happened. Ms. Jenkins stated that she did not remember going to the hospital. She acknowledged that her signature appeared on a sworn affidavit detailing that the defendant hit her with his fists, causing cuts, bruises and abrasions on her face. She asserted that she did not remember giving the statement or going to the courthouse to sign the warrant. Ms. Jenkins testified that she remembered going to the defendant's parent's house to pick up her youngest daughter and taking her to her grandparent's house. She stated that she began living with the defendant again approximately three months later. She said that she tried to reconcile within the three-month period but that the defendant would not speak to her.

5

On cross-examination, Ms. Jenkins testified that several people were at her and the defendant's trailer. She said that she remembered that she and the defendant drank over half of a fifth bottle of tequila on the night of the offense but that she could not remember if they finished the bottle. She stated that they drank the liquor when she returned from work at approximately 6:00 p.m., and she said that she drank the liquor quickly. Ms. Jenkins testified that she remembered drinking with a woman that lived nearby and asking her if she wanted to be with the defendant. Ms. Jenkins testified that she became very angry because the woman said that the woman was going to have sex with the defendant. She stated that she did not remember much after this point. She said that she did not remember getting in the shower, getting dressed in the bedroom, or fighting with the defendant at a neighbor's house. Ms. Jenkins testified that she also did not remember the police coming to the trailer.

Ms. Jenkins stated that during her relationship with the defendant, he had never struck her, although she had hit him a few times when she was angry and had been drinking. She admitted that she had a very bad temper. She said that her temper was bad enough for her to lie to the police because she was angry at the defendant. Ms. Jenkins testified that she had lied to other people about the defendant's conduct because she was angry at the defendant. On redirect examination, Ms. Jenkins testified that the defendant had never gone to the hospital as a result of her attacks. She stated that it was possible that she could knock a hole in a door. On recross-examination, Ms. Jenkins testified that the trailer she and the defendant lived in had holes in the doors when they moved there.

Deputy John James of the Blount County Sheriff's Department testified that he arrived when the defendant was siting in the back of a City of Alcoa police cruiser. He stated that he spoke to Ms. Jenkins very briefly as she was receiving medical treatment. He stated that she told him that she and the defendant had been

6

fighting. He said that Ms. Jenkins had blood on her face. He stated that he spoke to a neighbor regarding her 911 call for help.

Deputy James testified that he followed the ambulance to the hospital where he spoke to Ms. Jenkins. He said that Ms. Jenkins was still excited but that she was not drunk and was able to talk to him. He stated that he did not detect an odor of alcohol and did not notice any slurred speech. Deputy James testified that Ms. Jenkins told him that she and the defendant argued and eventually began fighting inside the trailer. He said that Ms. Jenkins stated that she ran to a couple of neighbors and asked them to call 911. Deputy James testified that he told Ms. Jenkins that she could speak to a judge or a judicial commissioner at the sheriff's department about obtaining a warrant against the defendant. On cross-examination, Deputy James testified that Ms. Jenkins essentially told him at the hospital that the defendant had assaulted her, although he could not remember the exact words used by Ms. Jenkins. He conceded that he did not test the victim for alcohol consumption.

John Tindell testified that he was a judicial commissioner for Blount County when the offenses occurred. He stated that he met with Cynthia Jenkins and that he received a sworn affidavit from her. He said that he issued a warrant on September 10, 1994, between the hours of midnight and 6:00 a.m. Mr. Tindell stated that he could not remember Ms. Jenkins' face but that he would not have issued a warrant had the victim been drinking because it was against policy procedures. He said that if Ms. Jenkins was intoxicated, she would have been incarcerated at the jail. He testified that policy procedures required that they tell a person who was not intoxicated but had been drinking to come back later when they had not been drinking. Mr. Tindell stated that he had never issued a warrant to someone who had been drinking, and he said that Ms. Jenkins had not been drinking. The affidavit signed by Ms. Jenkins and Mr. Tindell was introduced as an exhibit. It states that Ms. Jenkins reported that the

7

defendant hit her with his fists, causing multiple cuts, bruises and abrasions on her face. On cross-examination, Mr. Tindell conceded that he did not give breathalyzer or field sobriety tests to determine whether an affiant is under the influence of an intoxicant. He stated on redirect examination that he believed he could have detected if Ms. Jenkins had drunk a fifth of tequila.

Lieutenant Ronnie Sellers of the Alcoa Police Department testified that he received a call to assist the Blount County Sheriff's Department. He stated that when he arrived at Lakeview Terrace Mobile Home Park, he spoke to Cynthia Jenkins in one of the trailers. He stated that Ms. Jenkins had a lot of blood on her face, hands and clothes, and she was crying. Lieutenant Sellers testified that blood was also in the floor. He did not believe that she was drunk, although he conceded that he did not get very close to her. He stated that when he asked Ms. Jenkins what happened, she replied that the defendant had beaten her. He said that she told him that the defendant was in another trailer.

Lieutenant Sellers testified that he went to a nearby trailer and found the defendant inside sitting on the couch with a man. He stated that he asked the defendant what had happened, and the defendant replied that they had a fight. Lieutenant Sellers testified that he did not remember seeing a hole in the door, but he stated that he was concentrating on the defendant. He said that he had earlier dealings with the defendant, although he did not realize it at the time. He stated that he arrested the defendant and placed him in the back of a City of Alcoa police car. He said that the defendant had been drinking but that he cooperated with the police initially.

Lieutenant Sellers testified that when the defendant was taken out of the Alcoa police car to be transferred to a Blount County police car, the defendant began threatening Lieutenant Sellers and his family, telling him that he knew where they lived.

8

He said that he tried to assist the officers in taking the handcuffs off the defendant, but he had trouble because the defendant kept struggling. He stated that when he leaned up to tell the defendant that he could not get the handcuffs off with him struggling and to tell him to calm down, the defendant turned and spit in his face. He said that he was standing a couple of feet from the defendant when the defendant spat in his face. Lieutenant Sellers testified that he then wiped the spit out of his face, and the defendant continued to struggle. He said that he then sprayed the defendant's face with pepper spray because the defendant was out of control, and the defendant stopped struggling. Lieutenant Sellers testified that he did not say anything to make the defendant threaten him. He said that after the fourth or fifth threat, he told the defendant to stop by if he wanted. Lieutenant Sellers stated that he went to the emergency room to have his eyes flushed and his face scrubbed. He said that it scared him when the defendant spat in his face.

The defendant testified that he and Cynthia Jenkins had been dating approximately four years, had two children together, and planned to get married soon. He said that they were living together at the time of the offenses. He stated that he had been employed as a painter for a long time. The defendant testified that several people came to his trailer on the evening of September 4, 1994, and began drinking. He stated that he was drinking beer and that Ms. Jenkins was drinking tequila with a female neighbor. He said that they drank a fifth of tequila in approximately forty-five minutes and that they began drinking his beer at approximately 7:00 or 7:30 p.m. The defendant testified that they became intoxicated but that Ms. Jenkins got very intoxicated because she drank more than the neighbor. He stated that the neighbor began making passes at him and that Ms. Jenkins became very angry at him and the neighbor when she heard the neighbor state that she was going to get the defendant into bed. He said that he tried to explain to Ms. Jenkins that he was not interested in the neighbor. The defendant said that he asked the neighbor to leave but that Ms.

Jenkins was still real mad. He stated that he took their child to his mother's house, and Ms. Jenkins went to a neighbor's house. The defendant testified that his parents tried to get him to stay the night, but he told them that he needed to check on Ms. Jenkins because she was really drunk. He said that when he returned, Ms. Jenkins was still at the neighbor's house but that he did not go there to speak to her. He stated that several people told him that the police were coming after him. He said that he invited the police into his trailer when they arrived and that he was then arrested.

The defendant believed that Ms. Jenkins suffered her injuries when she fell out of the bathtub at approximately 9:00 p.m. He stated that Ms. Jenkins slipped when she reached down to turn off the faucet. He said that she also hit her head on the toilet next to the bathtub. The defendant stated that Ms. Jenkins cut her mouth or her nose in the bathroom and that it bled heavily. He said that he tried to clean the blood off her but she would not let him because she was angry at him. The defendant testified that Ms. Jenkins then went into the bedroom and fell down. He stated that Ms. Jenkins walked naked in front of their guests and that she fell several times in the house and fell once off the front porch. He stated that Ms. Jenkins dressed herself at some point after falling in the bathtub and walking naked in front of their guests.

The defendant testified that he and Lieutenant Sellers did not really talk but rather Lieutenant Sellers taunted him as they came off the front porch by saying that the police had him now and that he was going down and would never get out of jail. He said that this made him very angry. He conceded that he did not like Lieutenant Sellers. The defendant stated that Lieutenant Sellers continued to taunt him as he was behind the defendant trying to remove the handcuffs. He said that he was not struggling, although he was upset for being arrested because he believed that he had done nothing wrong. He admitted that he was extremely mad at Lieutenant Sellers and that he threatened to harm Lieutenant Sellers. He said that he also told Lieutenant

10

Sellers that he did not have to take off his handcuffs because he would fight him wearing handcuffs. The defendant testified that he did not remember threatening Lieutenant Sellers' family, and he said that he did not know where they lived. The defendant stated that it was clear that Lieutenant Sellers did not like him either. He said that a man behind Lieutenant Sellers sprayed him with pepper spray. He stated that when the spray hit his face, he spat because it got in his mouth, eyes and nose. The defendant asserted that he did not know which direction he was spitting. He testified that he did not intentionally spit on anyone, although he conceded that he was mad enough to spit on Lieutenant Sellers.

The defendant did not believe that the pepper spray was necessary because the only person he had any trouble with was Lieutenant Sellers and that was only because he was taunting the defendant. He denied that he was drunk on the night of the offense, although he admitted that he had a few drinks. He also admitted that he probably threatened Lieutenant Sellers' family, although he claimed that it was not intentional and that he would not actually hurt his family. He said that he did not speak to Ms. Jenkins after the arrest for several months. He stated that they no longer drink in the house. The defendant testified that he had never struck Ms. Jenkins, although she had struck him on earlier occasions. He stated that she had a very bad temper. He said that he tried to leave when Ms. Jenkins became violent. On cross-examination, the defendant conceded that he and Ms. Jenkins drank heavily at the time of the offenses, and he acknowledged that it caused a lot of problems for them. The jury found the defendant guilty of assaulting Ms. Jenkins and Lieutenant Sellers.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant asserts that the evidence is insufficient to support his convictions. He argues that the only way the jury could have found the defendant guilty was if they ignored all of his testimony and the inconsistencies in the testimony of the

11

state's witnesses. Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

In the light most favorable to the state, the evidence shows that the defendant and Ms. Jenkins argued after they consumed alcohol at their trailer. The evidence reflects that after the defendant struck Ms. Jenkins, injuring her, Ms. Jenkins ran to a neighbor's house and called the police. When the police arrived, Ms. Jenkins had blood on her face, hands and clothes, and she was crying and was upset. Ms. Jenkins told the officers that the defendant had beaten her up and had caused her injuries. Later, Ms. Jenkins also signed an affidavit asserting that the defendant hit her with his fists, causing cuts, bruises and abrasions on her face. Also, the trailer was in disarray, a hole had been punched in the door, and the steps to the trailer had been torn away. The defendant admitted striking at Ms. Jenkins and knocking a hole in the door. Although the defendant claimed that the victim was highly intoxicated and received her injuries when she fell in the bathtub, off the front porch, and in the bedroom and throughout the house, the jury was entitled to reject this testimony. The officers at the scene and the judicial commission who issued the warrant testified that Ms. Jenkins was not intoxicated. We hold that the evidence establishes beyond a reasonable doubt that the defendant assaulted Ms. Jenkins. <u>See</u> T.C.A. § 39-13-101(a)(1).

As for the assault charge against Lieutenant Sellers, the proof shows that the defendant was very intoxicated and that he began shouting and threatening Lieutenant Sellers as he was moved from one police car to another. The defendant admitted being very angry at Lieutenant Sellers and conceded that he threatened Lieutenant Sellers and his family. When Lieutenant Sellers assisted in the removing of the defendant's handcuffs, the defendant spat in Lieutenant Sellers' face. Lieutenant Sellers then sprayed the defendant with pepper spray, and the defendant calmed down. Afterwards, Lieutenant Sellers went to the emergency room to have his eyes flushed and his face scrubbed. Lieutenant Sellers testified that he was scared when the defendant spat in his face. Although the defendant testified that he did not spit until after he was sprayed with pepper spray and that he did not intentionally spit on Lieutenant Sellers, the jury was entitled to reject his testimony. This evidence is sufficient to prove an assault. See T.C.A. § 39-13-101(a)(3).

## II. DENIAL OF FULL PROBATION

The defendant contends that the trial court erred by denying full probation. He argues that he is an appropriate candidate for alternative sentencing. He concedes that he has a lengthy history of criminal behavior. However, he asserts that his prior convictions were alcohol-related and that society does not need to be protected from him because he had stopped drinking. The defendant also argues against the trial court's consideration of his prior unsuccessful attempts at measures less restrictive than confinement because it had been six years since the defendant had last been placed on probation and the defendant had changed his life since that time. The state responds that the trial court properly sentenced the defendant. We agree.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). A misdemeanant, unlike a felon, is not entitled to a statutory presumption of a minimum

13

sentence.  State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).  However, the sentence imposed should be the least severe measure necessary to achieve the sentencing purpose.  As the Sentencing Commission Comments state, although "probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." See also State v. Fletcher, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991).  A defendant who is eligible for probation has the burden of establishing suitability for probation.

At the sentencing hearing, the defendant testified that he worked as a painter for a company but that he had started his own painting business because the company went out of business.  He said that he planned to be a painting subcontractor for home constructions.  He stated that he had painted one apartment and had other painting jobs scheduled.  The defendant stated that he supported two children other than those he had with the victim.  He conceded that he did not pay the full amount of child support and was approximately sixty thousand dollars behind in payments.  He also admitted that it had been approximately six months since he had made a child support payment.  The defendant said that he and Ms. Jenkins planned to get married in April.

The defendant admitted that he had eight prior misdemeanor convictions and three prior felony convictions, and he claimed that they all involved alcohol.  The defendant stated that the breaking and entering and concealing stolen property convictions involved entering and taking alcohol from a VFW Club.  The defendant admitted that he was an alcoholic, but he said that he had been sober since November 19, 1996.  He stated that he went to a couple of AA meetings for the first week.  The defendant testified that after becoming sober, he had gone to church on a regular basis.  The defendant admitted that he had used marijuana after the trial, but he claimed that he used it only because he was depressed over being wrongly convicted.

14

The defendant also asserted that he only inhaled twice. He admitted that when he was interviewed for the presentence report, he lied to the probation officer about his prior use of marijuana even though a drug test showed that the defendant had used marijuana. He acknowledged that he should have told the truth, but he claimed that he was scared.

On cross-examination, the defendant acknowledged that he was granted probation for several of his prior convictions and that he violated the conditions of his probation for the burglary and theft convictions. The defendant denied being granted probation for an aggravated assault conviction and violating the conditions of the probation. The defendant testified that it was a rare occurrence that he tested positive for drugs. The state introduced a printout of the defendant's child support payments, and it reflects that the defendant had not made a payment in approximately fourteen months. An order revoking probation for the aggravated assault conviction was also introduced, reflecting that the defendant had violated the conditions of release.

The presentence report reflects that the then thirty-three-year-old defendant dropped out of high school in the tenth grade but that he had obtained his GED. It shows that the defendant had been employed as a painter for approximately one year. The defendant claimed to be in good physical and mental health, although he admitted that he had been through driving under the influence school on three occasions. He admitted that he had drunk alcohol since the age of thirteen and that he began drinking at least once a week when he was sixteen years old. The defendant claimed that he stopped drinking alcohol in 1996 when his driver's license was reinstated. The presentence report reflects that the defendant denied that he had ever used drugs, but the report states that an earlier presentence report showed that the defendant admitted trying marijuana when he was in high school. It shows that a drug

15

screen conducted in January 1997 tested positive for marijuana but that the defendant continued to deny that he used marijuana.

The report shows that the defendant had several prior convictions for offenses including assault, aggravated assault, breaking and entering, concealing stolen property, two counts of driving on a revoked license, three counts of public intoxication, and two counts of driving under the influence. It shows that the defendant was granted alternative sentencing several times but that he violated the conditions of release. The defendant denied that he committed the present offenses. The presentence report reflects that the victim blamed herself for the offenses, stating that she was highly intoxicated and had hit the defendant in the past during heated arguments. The victim stated that she told lies about the defendant because she was angry at him.

The court determined that the defendant had a previous history of criminal convictions or criminal behavior and a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. See T.C.A. § 40-35-114(1) and (8). The trial court denied immediate probation. It noted that the fact that the defendant had started a painting business weighed in favor of probation. However, it found that the defendant had been untruthful, had a long criminal history, and had failed to pay child support for fourteen months. The trial court also determined that the offenses committed by the defendant were violent ones. It found that the defendant used marijuana after being convicted of the present offenses and then lied to the probation officer regarding his drug use. The trial court held that the defendant was not amenable to rehabilitation.

In this case, the evidence demonstrates that the trial court followed the requirements of the law and exercised solid judgment in its determination that the

16

defendant should serve thirty percent of his sentences in confinement. The defendant has failed to establish that the trial court's sentencing decision was improper.

In consideration of the foregoing and the record as a whole, we affirm the trial court's judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:


_____
John H. Peay, Judge


_____
David G. Hayes, Judge